Filed
D.C. Superior Court
06/07/2021 13:55PM
Clerk of the Court

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |  |
|---|---|---|
| LATOYA D. WATSON<br>2741 Unicorn Lane, N.W.<br>Washington, D.C. 20015 | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| CNN AMERICA INC.<br>One CNN Center<br>Atlanta, Georgia 30303 | ) ) ) ) | Case No. _____ |
| Serve: CT Corporation System<br>1015 15th Street, N.W., #1000<br>Washington, D.C. 20005<br>Registered Agent | ) ) ) ) ) | |
| and | ) ) | |
| TARA YOUNG<br>2468 Ridgeway Drive<br>Atlanta, Georgia 30360 | ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT**

Plaintiff Latoya D. Watson, by counsel, hereby moves this Court for Judgment against

CNN AMERICA INC. and TARA YOUNG, jointly and severally, and in support thereof, states

as follows:

1.      This is a civil action arising out of discrimination and retaliation on the basis of

race, specifically the creation and maintenance of a discriminatory, retaliatory and hostile

working environment, by Defendants CNN America Inc. and Tara Young, in the course of the

employment of Plaintiff Latoya D. Watson.

2.     This action is brought under the District of Columbia Human Rights Act, D.C.

Code §2-1401.01 *et seq*., and under the common law of the District of Columbia.

<strong>PARTIES</strong>

3.     Plaintiff Latoya D. Watson ("Ms. Watson") is a resident and citizen of the District

of Columbia.  At all times relevant hereto, Ms. Watson was employed by CNN America Inc. in

the District of Columbia as the Supervisor, and then Manager, of Hair & Makeup in the D.C.

Hair & Makeup Division of CNN America Inc.

4.     Defendant CNN American Inc. ("CNN") is foreign corporation registered to do

business and in good standing in the District of Columbia, and which maintains an agent for

service of process in the District of Columbia.

5.     Defendant Tara Young ("Ms. Young") is a resident and citizen of the State of

Georgia.  At all times relevant hereto, Ms. Young was (and is) the Director of CNN Hair &

Makeup, with direct supervisory authority over Ms. Watson in the District of Columbia.

<strong>JURISDICTION AND VENUE</strong>

6.     This Court has jurisdiction over Ms. Watson's claims under the common law of

the District of Columbia.

7.     The amount in controversy exceeds the jurisdictional minimum amount for this

Court.

8.     CNN is an "employer" within the meaning of D.C. Code § 2-401.02(10).

9.     CNN is present in and conducts business in the District of Columbia, and is

subject to the personal jurisdiction of this Court.

10.     CNN is Ms. Watson's "employer" within the meaning of D.C. Code § 2-

1401.02(10).

11.     At all times relevant hereto, CNN was (and is) present in, and conducted business in, the District of Columbia, and therefore is subject to the personal jurisdiction of this Court.

12.     Defendant Tara Young was (and is) employed as a managerial and supervisory employee of CNN, and at all times relevant hereto, was Ms. Watson's direct supervisor.

13.     The tortious acts alleged in this Complaint were committed in the District of Columbia.

14.     Jurisdiction and venue are proper in this Court.

## BACKGROUND

15.     Ms. Watson is African-American (black).

16.     Ms. Watson was hired by CNN in May, 2004 as a freelance Hair & Makeup artist in Atlanta, Georgia.  In 2006, Ms. Watson was hired as a full time CNN hair and makeup artist based in Los Angeles, California.  In 2007 Ms. Watson was promoted to Senior Hair &Makeup Artist, and in 2011, she relocated back to CNN Atlanta in the same role.

17.      In the Spring of 2016, Ms. Watson applied for, and received a promotion to the Supervisor Hair & Makeup role based in Washington, D.C.  In July 2019, Ms. Watson was promoted to Manager, Hair &Makeup.  Ms. Young was the hiring manager for all roles held by Ms. Watson.

18.     At all times throughout her employment, Ms. Watson performed her job in an exemplary manner, as evidenced by her track record of promotions, and her performance reviews.

19.     Ms. Watson's 2016, Performance Recap stated, "2016 was an exceptional year for you and CNN.  You transitioned from an artist to a supervisor with ease, needing  little direction. . . . You're committed to excellence and go above and beyond to meet the business demands and

3

achieve success both personally and professionally."  Other comments that year included, "you have an innate desire to improve," "[y]ou are a great listener," "[y]ou wholeheartedly address each situation that needs attention immediately,"  "[y]ou offer smart solutions," and [y]ou have built great relationships."

20.     Ms. Watson's 2017 Performance Recap stated, "2017 was your 1st full year in the supervisory role and it was outstanding, for you and the DC H&MU team."  Other comments included, "You … have the team performing at a remarkably higher level.  Your energy, work ethic, and clear direction has transformed the team, a true reflection of your positive, influential coaching skills.  The H&MU team overall had one of the brightest, encouraging results in the Cultural Survey, a good reflection of your contribution and leadership in D.C. . . . . You are the voice of your team and have raised the bar for DC and will be a valued partner in 2018."

21.     Ms. Watson's stellar performance continued in to 2018, with comments including, "2018 was another great year for you, and accordingly the DC H&MU Team. . . . Your relentless commitment to managing performance . . . was rewarding.  Your ability to mediate peer to peer conflict to improve working relations and productivity is admirable."

22.     Ms. Watson's performance continued to shine in 2019.  "2019 started with a bang and the momentum never stopped . . . . [y]ou were able to hire, train, and retain an additional 14 talented artists, a big win for DC. . . . With you at the helm, the on-air product was exceptional and our department contributions were seamless.  You have continued to build your brand as a leader . . . Your leadership skills and ability to connect with your partners, created the opportunity to become an advisor on the newly established DC chapter of Turner Women."

23.     Before accepting the position as Supervisor  Hair & Makeup for the D.C. bureau, Ms. Watson attempted to negotiate a higher salary than the one being offered, to compensate for

4

the significant cost of living in the D.C. area as compared to Atlanta.  Her request was denied.

Ms. Watson also requested  relocation package and short term temporary housing while she

looked for a place to live, and that request was also denied.  Ms. Watson was given two weeks to

relocate and start her new role.

24.     On information and belief, Ms. Watson's Caucasian counterpart Julie Meads

("Ms. Meads"), CNN Hair & Makeup Manager in New York, was hired in 2012 at a higher

salary than Ms. Watson was receiving at the time.  When Ms. Watson and Ms. Meads were both

promoted by Ms. Young (who is Caucasian) from Supervisor to Manager of their respective Hair

& Makeup departments, Ms. Watson commented on a conference call that she was excited to

finally receive a pay bump after asking for (and not receiving) one quarterly from 2016-2020.

Ms. Meads stated that she was not getting much of an increase because she was "already there."

25.     Unlike Ms. Watson, Ms. Meads is not actually a hair and makeup artist – in other

words, Ms. Meads does not "do" hair or have hair experience, and she did not have media

experience prior to being brought on as Supervisor.  Ms. Watson was paid less than Ms. Meads,

despite being more qualified and having more experience, because of her race.

26.     In her position as Manager, Ms. Watson inherited a team of five Black artists, and

two Latino artists.

27.     During the time frame mid-2017 – October 2019, on several occasions, Ms.

Young stated during phone conferences and in person that Ms. Watson needed to "hire some

white girls" in D.C. and "change the D.C. culture."  Ms. Young repeated this statement on HMU

management meeting calls with Ms. Meads (Ms. Watson's NY counterpart) present, and in

person at a work dinner.

5

28.     Ms. Watson was completely taken aback and offended by Ms. Young's extremely discriminatory statement, which she repeated on numerous occasions.  Ms. Watson shared Ms. Young's remarks with a work colleague, Tiffany Bullock (DC Senior Hair & Makeup Artist).

29.     Ms. Watson also shared this statement with Boz Ul-Haque (Senior HR Business Partner) while at the Sugar Factory for an after work meet up.

30.     During the Spring of 2018, while at lunch with Ms. Young, Ms. Meads, and Maureen Dumond (HR), Ms. Watson brought up Ms. Young's statements about Ms. Watson needing to hire "white girls," pointing out that all other bureaus had the reverse demographic (in other words, predominantly white/Caucasian staff) but  no one had questioned or requested *that* demographic be changed.

31.     In or around June 2018, Ms. Young arranged for a Caucasian artist (a former employee and former hire of Ms. Young), Michelle Smith ("Ms. Smith"), to relocate to D.C. as a freelance artist.  Ms. Young then pressured Ms. Watson to hire Ms. Smith for a full-time role, which she did in October 2018 when a position became available.

32.     Then, when a Senior Artist role opened in February 2019, Ms. Young pressured Ms. Watson on several occasions, including on calls with Ms. Meads, to promote Ms. Smith into the position.  After Ms. Watson informed Ms. Young that she intended to promote Tiffany Bullock (black/African American)  to the position, Ms. Young attempted to persuade Ms. Watson to promote Ms. Smith, stating that she had solicited "professional input" from her friend/life coach, Haleh Gianni, regarding who should receive the promotion, and that Ms. Gianni could make certain determinations about people "just by looking at them."

33.     Ms. Young then texted Ms. Watson and suggested restructuring to create a job share position for Ms. Smith.  The was the first, and only, time such an arrangement had ever been discussed during Ms. Watson's time in a management role.

34.     Despite the fact that Ms. Watson is responsible for hiring in D.C., in addition to pressuring Ms. Watson to hire Ms. Smith, Ms. Young also pressured and intimidated Ms. Watson in to hiring another Caucasian artist, Emily Oldham ("Ms. Oldham").

35.     In May 2019, Ms. Young told Ms. Watson about an Atlanta based freelancer (Emily Oldham) that she was attempting to persuade to move to D.C.  Ms. Young further said that on May 24, 2019, Ms. Oldham was visiting D.C. at CNN's expense.  This is in stark contrast to how Ms. Watson was treated when relocating to D.C.

36.     After Ms. Oldham relocated to the D.C. area in October 2019, Ms. Young pressured Ms. Watson to hire Ms. Oldham for a permanent role when one opened in January 2020.

37.     In January 2020, Ms. Young increased Ms. Smith's salary significantly more than other non-white artists despite Ms. Watson's requests to evenly increase all salaries.  Ms. Young expressed concern and interest in Ms. Smith's salary more than others, and even followed up to check to see if "Michelle and others" received an increase.

38.     Two other hair and makeup artists, both African-American/Black (Latavia Lewis & Ebony McGee), both earned less than Ms. Smith, and did not receive comparable increases even though their performance was similar and, in some areas, stronger.

39.     On or around March 23, 2020, with the worldwide emergence and spread of the Covid-19 pandemic, CNN closed its offices.  At that time, the entire staff transitioned to working

7

remotely from home, on projects created and assigned by Ms. Watson, Ms. Young and Ms.
Meads.

40.     During August 2020, Ms. Watson, Ms. Meads, and Ms. Young had numerous
conversations centering on assessments to determine which artists would be laid permanently off
as a result of the Covid-19 pandemic.  Ms. Young challenged Ms. Watson's choices and asked
about bringing Ms. Smith back, and inquired as to how Ms. Smith ranked compared to others.

41.     Ultimately, Ms. Smith was laid off, but Ms. Young has commented that she will
hire Ms. Smith back when/if given the chance.  Ms. Young has not made similar comments
about any other artist who was laid off.  Ms. Smith was the only Caucasian artist from Ms.
Watson's team to be laid off.

42.     Ms. Young did not treat Ms. Meads in a similar manner, did not second guess Ms.
Meads' hiring/lay off decisions, or pressure Ms. Meads to hire certain individuals for the New
York bureau.

43.     Since the time Ms. Watson became Supervisor in 2016, and continuing
throughout her tenure as Manager, Ms. Watson was frequently asked to report to work and do
hair and makeup for Erin Burnett and others.  Actually performing hair and makeup service is
not part of Ms. Watson's job description; she is responsible for managing the artists that provide
the hair and makeup services for the on-air talent.

44.     Significantly. Ms. Watson's Caucasian counterpart, Ms. Meads, has never been
asked to or required to provide hair and makeup services.

45.     Throughout the 2018-2020 time period, Ms. Young openly made comments about
the fact that her bi-racial daughter only identifies as black.  Ms. Young stated on several
occasions that she had to remind her daughter that "she's white, too."  Ms. Young made these

8

comments in the presence of Ms. Watson, Ms. Meads and others, including at work dinners - and most recently in Atlanta at Barcelona restaurant with Stephanie Bennett (former CNN Atlanta Senior Artist) and once at Farmer's and Distillers in Washington, D.C. with her daughter and her daughter's two friends present.

46.     On June 2, 2020, during a conference call between with Ms. Young, Ms. Meads, and Roland Tram, Ms. Watson asked, on behalf of her team, about the policy regarding posting #BLACKLIVESMATTER on social media – if her team was permitted to participate in the protests. Ms. Young immediately responded, "no," stating that "black lives matter" is "an opinion," which is "controversial," and which constitutes a "political statement." Ms. Watson was shocked, and extremely offended, by Ms. Young's statement that "black lives matter" is a controversial, political opinion. Ms. Watson pointed out that as a company, CNN has supported human rights by sponsoring gay rights initiatives and asked why this was any different. Mr. Tram interceded in the discussion, promising to find out the official policy for posting/participating in protests, and would let us know.

47.     On August 14, 2020, Ms. Young notified Ms. Watson and Ms. Meads that they would be required to create "attributes" to be used to assess their team members in order to identify the top performers who would be brought back to work. The remaining employees would be laid off. Together, Ms. Watson and Ms. Meads developed the "attributes" to be used for assessment. Ms. Young made a few adjustments, submitted the plan to HR, and then returned the approved "attributes" plan to Ms. Watson and Ms. Meads for use in ranking their team members. Ms. Watson was told that her top three performers would return to CNN.

48.     On August 26, 2020, Ms. Young informed Ms. Watson and Ms. Meads that they would likely be returning to their respective bureaus soon, and should start preparing in anticipation of returning.

49.     On August 28, 2020, Ms. Watson was instructed to provide hair and makeup services to Senior White House Correspondent Pamela Brown ("Ms. Brown") in bureau prior to approval being received for staff to return to the bureau offices – the hair and makeup studios had been closed since March 23, 2020 due to Covid.

50.     Although the studios did not reopen until September 8, 2020, Ms. Watson was still required to report to the bureau premises to provide hair and makeup services for Pamela Brown.  No one else within the department was asked to do the same.

51.     On that same day, Ms. Young announced that Ms. Watson and Ms. Meads would officially be reopening their respective studios with the top performers as previously identified. Ms. Young further told Ms. Watson that she should personally plan to do the hair and makeup for Ms. Brown during the week of August 31 since they had not received final approval from HR for the official re-opening.  Performing hair and makeup services was not part of Ms. Watson's job description as a Manager, and was not asked of any other manager, particularly Ms. Watson's Caucasian counterpart, Ms. Meads.

52.     During the week of August 31, 2020, Ms. Watson was in the bureau preparing for the reopening.  She scheduled appointments for the week with Ms. Brown for hair and makeup.

53.     On Tuesday, September 1, 2020, staff received an email announcing the limited reopening of the studios, and that those receiving the email would not be returning to the bureau but would continue to work from home.

10

54.     That evening, Ms. Watson received a text message from Anchor Brianna Keilar ("Ms. Keilar") (Caucasian) stating that she had heard that the hair and makeup artists were returning to the bureau.

55.     On Wednesday, September 2, 2020, after CNN on-air talent was notified of the limited re-opening, when Ms. Watson spoke by phone to Ms. Keilar, Ms. Keilar asked if Valeska Williams ("Ms. Williams") (Caucasian/Swedish) (Ms. Keilar's and Ms. Brown's friend and personal hairstylist, who is also a staffed hair & makeup artist with CNN) was returning.  Ms. Watson told Ms. Keilar that Ms. Williams would not be returning at that time.  When Ms. Keilar asked why, Ms. Watson informed her that many factors went into the decision, but that she could not discuss the details. Ms. Watson told Ms. Keilar that Latavia Lewis ("Ms. Lewis"), a returning CNN hair & makeup artist, would be accommodating her hair and makeup needs going forward. Ms. Lewis is black/African American.

56.     When Ms. Keilar emphasized how healthy her hair had been since she had been doing it herself during Covid, Ms. Watson assured her that Ms. Lewis would maintain the health of her hair and that she was fully equipped to deliver both hair and makeup equally. Ms. Keilar said she understood and stated that Ms. Lewis "does a mean blowout." She agreed to having Ms. Lewis do hair and makeup at the onset of the reopen and to give her a try.

57.     On September 3 and 4, 2020, while Ms. Watson was providing hair and makeup services to  Ms. Brown, Ms. Brown asked if Ms. Williams would be returning.  When Ms. Watson responded that Ms. Williams would not be returning at that time, Ms. Brown expressed her desire for Ms. Williams to return.. She asked how the decisions were made to determine who returned, and Ms. Watson said she made decisions based on the needs of the business and would not go into further detail.

58.     On September 4, 2020, as Ms. Watson was doing Ms. Brown's makeup, Ms.

Brown received a phone call from Virginia Mosely ("Ms. Mosely"). Ms. Watson could only

hear one side of the conversation, but heard Ms. Brown say, "Valeska [Williams]… yes, I

agree… Latoya … I'm here and she's doing me now…"

59.     On Monday, September 7, 2020, Ms. Watson texted Ms. Keilar to confirm her

appointment time for the next day. Ms. Keilar said she needed time to "think about" whether she

wanted Ms. Lewis to do her hair and makeup.

60.     The next day, Ms. Keilar called Ms. Watson and requested to have Ms. Williams

for her hair and makeup. She said it was a "matter of comfort" since she knew, "for a fact" that

Ms. Williams was not around people other than those in her home. Ms. Keilar made this

statement despite the fact that Ms. Williams was at the time, working three to four days in a

salon with clients. Ms. Keilar said she would continue to do her own hair and makeup if Ms.

Williams was not brought back. Ms. Keilar again questioned how Ms. Watson had determined

who would be brought back, and Ms. Watson again responded that she made her decisions based

on business needs and would not go into detail.

61.     On Thursday, September 10, 2020, Ms. Watson received an email from Shawn

Giangeruso ("Mr. Giangeruso"), the Director of Talent Recruitment and Dev. Recruiting asking

if she had time to speak. When they spoke later that day, Mr. Giangeruso questioned Ms.

Watson as to how she had decided which artists to bring back. He asked specifically, "who

works with Pamela Brown and Brianna Keilar?" As Manager of her department, with staffing

and hiring responsibilities, Ms. Watson again stated that her decisions were made based on

business needs and that she would not go in to detail. Ms. Watson later learned that Mr.

Giangeruso had first contacted Ms. Meads to get information about D.C.'s staffing, despite the fact that Ms. Watson managed D.C., and not Ms. Meads.

62.     On Tuesday, September 15, 2020, Ms. Young sent a text message instructing Ms. Watson and Ms. Meads to create Excel spreadsheets indicting which of their team members were staying or being let go, and the justifications for each decision. Ms. Young texted, "Entelis [Executive VP for Talent and Content Development] is meddling."

63.     Later that day, during a call, Ms. Young shared that Paul Crum ("Mr. Crum") (Vice President - News Operations, Business Administration & Affiliate Services,) was due to meet with Amy Entelis ("Ms. Entelis") to discuss why Ms. Williams had not been brought back. Ms. Young assured Ms. Watson that Mr. Crum had explained to Ms. Entelis that he trusted his management teams' decisions and that they were final.

64.     On Wednesday, September 16, 2020, Ms. Young texted Ms. Watson and Ms. Meads, "Hot off the press - Greene is now questioning why Valeska is not returning. Looks like Entelis wasn't happy with Paul's explanation." "Greene" refers to Lisa Greene, Executive Vice President and Chief Human Resources Officer, WarnerMedia News & Sports.

65.     Ms. Young also shared that Ms. Williams had filed a complaint against Ms. Watson, alleging favoritism. Ms. Watson vehemently denied the accusations, assured Ms. Young the claims were false, and stated that she felt she was being retaliated against for not bringing Ms. Williams (a personal friend of Ms. Keilar and Ms. Brown) back.

66.     Ms. Young stated said that she was not supposed to have told Ms. Watson about the complaint, and asked her not to mention to anyone that she shared those details.

67.     In mid-September, during a phone conversation with Ms. Meads, Ms. Watson expressed her frustration with Ms. Young pressuring her to retain Michelle Smith (Caucasian),

13

the freelancer she was pressured to hire, who did not have the same skill level as the top performers.

68.    On Tuesday, September 22, 2020, Ms. Young informed Ms. Watson that Ms. Williams would be returning with the group of non-impacted employees.  She said Jeff Zucker (President CNN) personally reversed the decision made by Ms. Watson, "it is what it is," and that Ms. Williams needed to be trained, "ASAP."

69.    Ms. Watson objected, and told Ms. Young that the action was unethical, unfair, and against company protocol and further, opened CNN up to liability claims since Ms. Williams, who is white, ranked lower than two other artists per the assessment.

70.    At this point, Ms. Watson was extremely disappointed and frustrated that she was being prevented from doing her job, and that her management decisions, which were based on measurable criteria, were being second guessed, scrutinized and overturned.

71.    Other Managers, who are not black/African American, were not treated in this same manner.

72.    Ms. Watson had previously been touted in her performance reviews as "the voice of the D.C. team," whose clear direction" "transformed the team, a true reflection of your positive, influential coaching skills," with a relentless commitment to managing performance" and an "admirable" ability "to mediate peer to peer conflict to improve working relations and productivity."  And, as recently as 2019, "With you at the helm, the on-air product was exceptional."

73.    Based on the disparate and unfair treatment she was being subjected to, and because she was now being prevented from doing her job, Ms. Watson requested to be provided with the same severance package that the impacted (laid off) employees were receiving.  Ms.

14

Young said she "understood," conceded that Ms. Watson was correct, and that the actions of CNN in disregarding and overturning her management decisions, and returning Ms. Williams – a Caucasian employee with an inferior skill set than the artists being let go – were "indefensible." Ms. Young indicated her intent to discuss the matter with Mr. Crum and be back in touch.

74.     Ms. Young reiterated her hope that Ms. Watson would not mention that Ms. Young had shared the fact of the HR complaint/investigation with Ms. Watson.

75.     Ms. Watson told Ms. Young that the entire situation had an "undercurrent of race" which has always been present, but which Ms. Watson had not previously raised. Ms. Young conceded, "I can see how you would feel that way." Ms. Watson told Ms. Young she felt devalued, and that she was not being treated with respect, dignity or integrity – that as the only black Manager in the Division, she was the only manager whose decisions were questioned, and especially at such high levels – reaching Jeff Zucker the President of CNN, which undoubtedly would impact Mr. Zucker's perception of Ms. Watson as a Manager in his organization.

76.     Ms. Watson expressed that her professional reputation was at risk, and that the work environment had become hostile and intolerable, and that she was constantly undermined, rendering her incapable of fully performing her job.

77.     About 15 minutes after that conversation, Mr. Crum and Ms. Young "group Facetimed" Ms. Watson. Ms. Watson shared the same issues and feelings with Mr. Crum. Mr. Crum called it a "bump in the road" and pledged his support of Ms. Watson "to manage Valeska out." He asked Ms. Watson to "think about it."

78.     Several hours later, Ms. Watson reiterated her request to Ms. Young for a severance package. Ms. Watson emphasized that she was no longer able to do her job without the

15

interference, scrutiny and undermining by several parties, and there was no guarantee that it would not reoccur, since her decisions had been ignored and/or reversed.

79.     Ms. Meads called Ms. Watson later that day and offered her full support, stating that she did not want Ms. Watson to leave.  Ms. Meads suggested Ms. Watson speak directly to Jeff Zucker.  Ms. Watson was taken aback by the level of Ms. Meads' knowledge since Ms. Watson had never had a conversation with her about it, and Ms. Meads had not been a participant on any calls with Ms. Watson about these issues.

80.     On the morning of September 23, 2020, Ms. Watson spoke with Ms. Young, who shared that Mr. Crum was working on a severance package for Ms. Watson, and that he would share the details with her when it was complete.  Ms. Young further stated that she and Ms. Meads would split managing the D.C. bureau, that she hoped to back-fill the position at some point mid next year, and asked if Ms. Watson would consider coming back at that time.

81.     Ms. Young also asked Ms. Watson to create a folder in the shared drive with specific bullets for her and Ms. Meads to reference relating to management of the D.C. studio.

82.     Shortly thereafter, at around 9:00 a.m., Mr. Crum contacted Ms. Watson via FaceTime and informed her that she was ineligible for severance benefits because he intended to backfill the position at some point in the future.  He then shared that he was working on a separation package for Ms. Watson, but that it would be "less robust."  He promised to work to get Ms. Watson "the best package possible" and cautioned that if Ms. Watson had anything negative to say about the situation or the people involved, to "call [him] and [him] only."

83.     Mr. Crum reiterated, "Do not to speak to anyone else otherwise you will fuck this up. Do not fuck this up."  In other words, if Ms. Watson voiced her complaints about race discrimination, hostile work environment or retaliation, she would not receive a separation

package, having already been denied the same severance package other employees were
receiving.

84.     Mr. Crum said he needed a day or two to prepare the package and have it
approved, and instructed Ms. Watson to proceed as planned with the upcoming conversations
that day regarding layoffs.  Ms. Watson agreed, to which Mr. Crum replied, "You're a real pro
and I have so much more respect for you for standing up for what you believe to be right, and
your way of operating with integrity."   He further said, "I don't want to lose you, but I support
you if you feel it's your time to leave."

85.     That day, Ms. Watson spoke with all impacted and non-impacted employees, as
instructed, sticking to the talking points and telling the artists that decisions on who returned
were based on skill level and the business needs.

86.     Anderson Cooper and Cristiane Amanpour requested to have their preferred artist,
Yoko Fumoto (Asian), return to Ms. Meads and Roland Tram's team, but their request was not
honored.

87.     Ms. Watson was the only black/African American Manager in the Hair & Makeup
Division.  Everyone who questioned and/or undermined her decisions, or had a role in reversing
the decision respecting Ms. Williams, is Caucasian.

88.     On September 23, 2020, Ms. Watson sent an email to Jason Kilar (CEO,
WarnerMedia) stating her belief that she was being treated differently based on her race.  She
included in her complaint that she was often asked to perform hair and makeup services, while
other managers were not.  Ms. Watson's complaint was forwarded to an outside law firm
(Littler) to conduct a third party investigation.

89.     On Friday, September 25, 2020, as Tiffany Bullock (Senior Artist in the D.C. bureau) was styling Ms. Brown's hair, Ms. Bullock sent an email to Amy Entelis and Briana Keilar (directly in Ms. Bullock's line of sight). The subject line was "Valeska," and Ms. Bullock could easily see the text, which read, "We won. Valeska is back and that is a win not only for us but for the entire company."

90.     On Monday, September 28, 2020, Ms. Young told Ms. Watson that her proposed separation package was on "legal and HR's desks."

91.     On Monday, October 5, 2020, while on a call with Ms. Young and Ms. Meads, Ms. Watson pointed out that her laptop could be repurposed/reassigned once she departed. They both laughed aloud, and Ms. Young said, "We're just pretending that that's not happening." Ms. Meads said, "You're not going anywhere, where are you going, on PTO?" Ms. Watson was saddened and disappointed by their reactions, which belittled, and refused to acknowledge, the experience that Ms. Watson was having, and negated and ignored the very real fact that the second guessing, undermining and reversing of Ms. Watson's management decisions was racially motivated, created an intolerable and hostile environment for Ms. Watson, prevented her from doing her job, and made her feel degraded, devalued and disrespected.

92.     On October 9, 2020., Ms. Watson shared her complaint about the layoff process with third party investigator, Josh Bortnick ("Mr. Bortnick").

93.     On Wednesday, October 21, 2020, Ms. Watson learned from one of her direct reports (Ebony McGee, CNN hair & makeup artist) about a company-wide virtual Town Hall meeting that had been facilitated by Jeff Zucker. Ms. McGee praised the meeting, and said that Jeff Zucker had discussed the layoffs in hair and makeup. Ms. Watson then called Tiffany Bullock (Senior Hair and Makeup Artist), who confirmed that the town hall had taken place, and

shared the details of when the invite went out and from whom.  Ms. Watson, who had received

notifications of town hall meetings in the past, did not receive any communications regarding

this particular town hall, even though each of her direct reports did.

94.      Ms. Watson sent a follow-up email to Mr. Bortnick, the third party investigator, to

add to her complaint, stating that she felt her exclusion from the town hall was intentional and

retaliatory.

95.      On October 26, 2020, Ms. Bullock shared that an appointment request had come

through to the distribution list.  Ms. Watson had not received the request, and discovered she had

had been removed from two distributions lists/email chains.  Ms. Watson immediately emailed

Ms. Young, who claimed she did not know how it had happened.

96.      On Tuesday, November 3, 2020, Ms. Watson told  Ms. Young that she had

reached out to all anchors for appointment needs for election week and that everyone with the

exception of Brianna Keilar had responded.  Instead, Ms. Keilar had circumvented Ms. Watson

and requested her appointments through Ms. Williams, which Ms. Williams then submitted to

Ms. Watson.  Ms. Watson told both Ms. Young and Mr. Bortnick that this was a further act of

retaliation, and was a blatant attempt to prevent her from successfully doing her job.

97.      On Tuesday, November 17, 2020 during a conference call between Ms. Watson,

Ms. Young and Ms. Meads, Ms. Young remarked that Abby Phillip, an African-American, DC

based political correspondent, had received a lot of press regarding her coverage of the 2020

election.  Ms. Young commented, "She is good, I like her, she's a cute girl.  I'd much rather listen

to her than, let's say, Nia - her voice is kind of annoying."  Despite the fact that Ms. Young could

have referenced any one of tens of correspondents, she intentionally chose the only other African-

19

American correspondent to compare to Ms. Phillip – signaling that in her mind, a comparator to Ms. Phillip had to also be African-American in order to qualify as a comparator.

98. On November 18, 2020, during a conference call between Ms. Watson, Ms. Young, Ms. Meads, and Senior Artists - Jackie Donnelly (NYC), Tiffany Bullock (DC), Sarah Wood (Bleacher Report, NYC), and Ximena Rolfe (LA), Ms. Young brought up that staff would begin hair trainings using mannequin heads, and that everyone needs to get stronger with "ethnic" hair. Ms. Young and Ms. Meads used the term "ethnic" hair repeatedly throughout the call. The correct term is "textured" hair, as any person from any race can have any texture of hair.

99. Notably, all of the top performers that were brought back to the D.C. bureau were black/African American.

100. During Ms. Watson's tenure as Manager, despite inheriting a staff comprised of only black/African American and Latino members, as of August 2020, Ms. Watson' team had six black/African American artists, two Caucasian artists, and one Latino artist, making it one most (if not the most) diverse team of any department. She hired fairly and based on experience.

101. Nevertheless, Ms. Watson, the only black manager, was the only manager questioned about her judgment and decisions. In both New York and Atlanta, all returning staffed artists are Caucasian:  Claudia Pedala (NYC); Merrell Daly (NYC); Jackie Donnelly; (NYC); Laura Gattini (NYC); Nadia Sobh (ATL); Heather Spann (ATL); and Amanda Alexander (ATL).

102.     On December 1, 2020, Ms. Watson received an email from Roland Tram,

advising her that the investigation into her complaints of discrimination and retaliation had been

closed, and that the "investigation could not substantiate" her claims of differential treatment

based on her race.

103.     Ms. Watson is currently still employed, and is on PTO until December 17, 2020,

as a result of the work environment.

**COUNT ONE –**
**DISCRIMINATION IN THE COURSE OF EMPLOYMENT**
**IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against CNN America Inc.)**

104.     The allegations of the foregoing paragraphs are incorporated as if re-alleged

herein.

105.     Ms. Watson was an employee of CNN within the meaning of D.C. Code § 2-

1401.02(9).

106.     CNN is an employer within the meaning of D.C. Code § 2-1401.02(10).

107.     CNN through its agents, officers and employees, and in particular, Ms. Young,

discriminated against Ms. Watson on account of her race, African-American (black) in the

course of her employment.  This discrimination was with respect to the terms, conditions, and

privileges of Ms. Watson' employment, in violation of D.C. Code § 2-1402.11.

108.     As set out above in this Complaint, the acts of discrimination included:

- Ms. Young/CNN hiring Ms. Meads at higher salary than Ms. Watson was paid in the same position, despite the fact that Ms. Watson had actual hair & makeup and media experience, and Ms. Meads did not;

- Requiring Ms. Watson to report to work and perform hair and makeup services for Erin Burnett and others – something which was not part of Ms. Watson's job description as Manager, while not requiring Ms. Watson's Caucasian counterpart, Ms. Meads, to do so;

- Requiring Ms. Watson (and no one else within the department) to report to the bureau premises to provide hair and makeup services for Pamela Brown before the bureau officially reopened during the pandemic;

- Ms. Young instructing Ms. Watson to "hire some white girls and change the D.C. culture" which, at the time the comment was made, was comprised of five black artists, and two Latino artists;

- Ms. Young pressuring Ms. Watson to hire a Caucasian freelancer, Michelle Smith, for full time role in Ms. Watson's department;

- Ms. Young pressuring Ms. Watson to promote Michelle Smith to Senior Artist role and, when Tiffany Bullock (black) was promoted instead, suggesting restructuring for job to create a job share arrangement – something which had never been suggested before;

- Ms. Young/CNN increasing Ms. Smith's salary significantly more than other non-white artists despite Ms. Watson's requests to evenly increase all salaries;

- Ms. Young challenging Ms. Watson's choices and management decisions, and when Michelle Smith was not determined to be one of the top three performers to return to work, asking about bringing Ms. Smith back, and inquiring as to how Ms. Smith ranked compared to others (the top performers were black/African American);

- Ms. Young pressuring and intimidating Ms. Watson in to hiring another Caucasian artist, Emily Oldham;

- CNN paying the expenses for Ms. Oldham to visit the Washington, D.C. studio at CNN's expense (in contrast to refusing Ms. Watson's requests for a cost of living increase, moving expenses, or short term living expenses while looking for a place to live, when she was relocating from CNN Atlanta to CNN D.C. for her job);

- Ms. Young commenting that her bi-racial daughter only identifies as black, and stating on several that she had to remind her daughter that "she's white, too;" and

- Ms. Young stating that "black lives matter" is controversial, political opinion and that Ms. Watson's team could not post on social media in support of the #BlackLivesMatter movement, notwithstanding the fact that CNN as a company has sponsored gay rights initiatives in the past.

109.    CNN, through its agents, officers and employees, and in particular, Ms. Young, engaged in the discriminatory conduct set forth above and throughout this Complaint based on Ms. Watson's race, African-American (black), in violation of D.C. Code§ 2-1402.11(a)(1).

110.    This discrimination involved and affected the terms, conditions, and privileges of Ms. Watson's employment in violation of D.C. Code § 2-1402.11.

111.    The actions of CNN had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401, *et seq*., in violation of D.C. Code § 2-1402.11.

112.    The discriminatory actions of CNN were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for the rights of Ms. Watson.

113.    As a direct and proximate result of CNN's conduct, Ms. Watson has suffered, and will in the future suffer, great damage including loss of past and future income, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses, great anxiety, headaches, insomnia, weight gain, digestive issues, a loss of confidence, embarrassment, humiliation, inconvenience, a sense of betrayal, isolation and profound injustice, damage to her reputation, mental anguish, stress, pain and suffering.

114.    As a direct and proximate result of CNN's discrimination, Ms. Watson is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq*.

115.    Due to the character and severity of the actions of CNN, and consistent with its intentional discrimination, Ms. Watson is also entitled to punitive damages.

**COUNT TWO – AIDING AND ABETTING DISCRIMINATION**
**IN THE COURSE OF EMPLOYMENT IN VIOLATION**
**OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against Tara Young)**

116.    The allegations of the foregoing paragraphs are incorporated as if re-alleged

herein.

117.    Through her individual actions, Tara Young, aided and abetted the discrimination

against Ms. Watson, as described in more detail in Count I above and throughout this Complaint,

in violation of D.C. Code § 2-1402.11.

118.    Ms. Young aided and abetted the discrimination because of his bias against black

employees/employees of color in the workplace.

119.    Acts of discrimination aided and abetted by Ms. Young in supporting, condoning

and failing to bring an end to acts of discrimination by CNN include those set forth below, and

throughout the Complaint, and her condoning the discriminatory behavior and maintaining and

ratifying the discriminatory work environment where such behavior was allowed to occur:

- Ms. Young hiring Ms. Meads at higher salary than Ms. Watson was paid in the same position, despite the fact that Ms. Watson had actual hair & makeup and media experience, and Ms. Meads did not;

- Requiring Ms. Watson to report to work and perform hair and makeup services for Erin Burnett and others – something which was not part of Ms. Watson's job description as Manager, while not requiring Ms. Watson's Caucasian counterpart, Ms. Meads, to do so;

- Requiring Ms. Watson (and no one else within the department) to report to the bureau premises to provide hair and makeup services for Pamela Brown before the bureau officially reopened during the pandemic;

- Ms. Young instructing Ms. Watson to "hire some white girls and change the D.C. culture" which, at the time the comment was made, was comprised of five black artists, and two Latino artists;

- Ms. Young pressuring Ms. Watson to hire a Caucasian freelancer, Michelle Smith, for full time role in Ms. Watson's department;

24

- Ms. Young pressuring Ms. Watson to promote Michelle Smith to Senior Artist role and, when Tiffany Bullock (black) was promoted instead, suggesting restructuring for job to create a job share arrangement – something which had never been suggested before;

- Ms. Young increasing Ms. Smith's salary significantly more than other non-white artists despite Ms. Watson's requests to evenly increase all salaries, and then following-up to be certain Ms. Smith's salary increase was done;

- Ms. Young challenging Ms. Watson's choices and management decisions, and when Michelle Smith was not determined to be one of the top three performers to return to work, asking about bringing Ms. Smith back, and inquiring as to how Ms. Smith ranked compared to others (the top performers were black/African American);

- Ms. Young pressuring and intimidating Ms. Watson in to hiring another Caucasian artist, Emily Oldham; and

- Ms. Young commenting that her bi-racial daughter only identifies as black, and stating on several that she had to remind her daughter that "she's white, too."

120.    The discriminatory conduct of Ms. Young was intentional, and it evinced ill will, recklessness, and willful disregard for the rights of Ms. Watson, as well as wantonness, oppressiveness, maliciousness, and a spirit of mischief.

121.    The discriminatory conduct of Ms. Young had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401.1, *et seq.,* in violation of D.C. Code §§ 2-1402.68 and 2-1402.62.

122.    As a direct and proximate result of Ms. Young's conduct, Ms. Watson has suffered, and will in the future suffer, great damage including loss of past and future income, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses, great anxiety, headaches, insomnia, weight gain, digestive issues, a loss of confidence, embarrassment, humiliation, inconvenience, a sense of betrayal, isolation and profound injustice, damage to her reputation, mental anguish, stress, pain and suffering.

123.     As a direct and proximate result of the discrimination aided and abetted by Ms.

Young, Ms. Watson is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as

described in D.C. Code § 2-1403.13 and the Code of the D.C. Municipal Regulations, Title 4,

Chapter 2, 4-200 CDCR, *et seq.*

124.     Because of the character and severity of Ms. Young's conduct as set forth above,

Ms. Watson is also entitled to punitive damages.

**COUNT THREE –**
**RETALIATION IN VIOLATION OF THE**
**DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against CNN America Inc.)**

125.     The allegations of the foregoing paragraphs are incorporated as if re-alleged

herein.

126.     Ms. Watson was an employee of CNN within the meaning of D.C. Code § 2-

1401.02(9).

127.     CNN is an employer within the meaning of D.C. Code § 2-1401.02(10).

128.     CNN through its agents, officers and employees, and in particular, Ms. Young,

retaliated against Ms. Watson on account of her race, African-American (black), and because she

complained about the discrimination to which she was subjected, and insisted that CNN properly

investigate and address the discrimination.  This retaliation was with respect to the terms,

conditions, and privileges of Ms. Watson's employment, in violation of D.C. Code § 2-1402.11.

129.     As set out above in this Complaint, the acts of retaliation included:

- After Ms. Watson determined not to return Ms. Williams (Caucasian) to the studio, based on the attributes and measurable criteria established for making the decisions, Ms. Watson's decisions were questioned and complained about by Caucasian, on-air talent personalities;

- Brianna Keilar (Caucasian), who was aware that Ms. Williams was not one of the artists returning to the studio called Ms. Watson and requested to have Ms. Williams for her hair and makeup anyway, stating it was a "matter of comfort;"

26

- Ms. Keilar stating that she would continue to do her own hair and makeup if Ms. Williams was not brought back, instead of allowing one of the three top performing artists (all black/African American) to do her hair and makeup;

- CNN allowing and condoning others (Brianna Keilar, Pamela Brown, Shawn Giangeruso, Amy Entelis – all Caucasian) to question and overturn management decisions made by Ms. Watson, while not treating Ms. Meads (Ms. Watson's Caucasian counterpart) in the same manner;

- Overturning Ms. Watson's decision not to return Ms. Williams to work, and informing Ms. Watson that Ms. Williams would be returning anyway, and that Ms. Watson needed to train her as soon as possible;

- Allowing Ms. Keilar to circumvent Ms. Watson and request her appointments through Ms. Williams, despite Ms. Watson's complaints to Ms. Young and Mr. Bortnick that this was a further act of retaliation, and was a blatant attempt to prevent her from successfully doing her job;

- Excluding Ms. Watson from a town hall meeting, despite her entire department receiving notification; and

- Declaring Ms. Watson ineligible for the severance packages other employees were receiving;

- Mr. Crum telling Ms. Watson not to complaint to anyone at CNN (aside from him) because if she did, she would "fuck up" her chances of receiving a separation package.

130.    CNN, through its agents, officers and employees, and in particular, Ms. Young, engaged in the retaliatory conduct set forth above and throughout this Complaint based on Ms. Watson's race, African-American (black), and because she complained about the discriminatory treatment she was being subjected to, and insisted that CNN take action, in violation of D.C. Code§ 2-1402.11(a)(1).

131.    This retaliation involved and affected the terms, conditions, and privileges of Ms. Watson's employment, in violation of D.C. Code § 2-1402.11.

132.    The actions of CNN had the effect and consequence of violating the provisions of the D.C. Human Rights Act, D.C. Code § 2-1401, *et seq.*, in violation of D.C. Code § 2-1402.11.

133.    The retaliatory actions of CNN were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for the rights of Ms. Watson.

134.    As a direct and proximate result of CNN's conduct, Ms. Watson has suffered, and will in the future suffer, great damage including loss of past and future income, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses, great anxiety, headaches, insomnia, weight gain, digestive issues, a loss of confidence, embarrassment, humiliation,
inconvenience, a sense of betrayal, isolation and profound injustice, damage to her reputation, mental anguish, stress, pain and suffering.

135.    As a direct and proximate result of CNN's retaliation, Ms. Watson is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq*.

136.    Due to the character and severity of the actions of CNN, and consistent with its intentional retaliation, Ms. Watson is also entitled to punitive damages.

**COUNT FOUR –**
**AIDING AND ABETTING RETALIATION IN VIOLATION**
**OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
**(Against Tara Young)**

137.    The allegations of the foregoing paragraphs are incorporated as if re-alleged herein.

138.    Through her individual actions, Tara Young, aided and abetted the retaliation against Ms. Watson, as described in more detail in Count III above and throughout this Complaint, in violation of D.C. Code § 2-1402.11.

139.    Ms. Young aided and abetted the discrimination because of her bias against black

employees/employees of color in the workplace and because Ms. Watson complained about,

opposed and resisted Ms. Young's discriminatory conduct towards herself and others, and

because Ms. Watson refused to acquiesce to Ms. Young's pressure and demands to retain, hire

and/or promote individuals who were not the most qualified for the positions in question.

140.    Acts of retaliation aided and abetted by Ms. Young included:

- Overturning Ms. Watson's decision not to return Ms. Williams to work, and
  informing Ms. Watson that Ms. Williams would be returning anyway, and that
  Ms. Watson needed to train her as soon as possible;

- Allowing Ms. Keilar to circumvent Ms. Watson and request her appointments
  through Ms. Williams, despite Ms. Watson's complaints to Ms. Young that this
  was a further act of retaliation, and was a blatant attempt to prevent her from
  successfully doing her job, and Ms. Young refusing to advocate for Ms. Watson
  on this issue despite Ms. Watson's request that she do so;

- Refusing to acknowledge or address the seriousness of Ms. Watson's complaints
  of discrimination, hostile work environment, and retaliation, by making jokes
  (with Ms. Meads) about Ms. Watson's request for a severance package, based on
  the fact that the work environment had become intolerable and because she was
  being prevented from successfully performing her job.

141.    Ms. Young engaged in the retaliatory conduct set forth above and throughout this

Complaint based on Ms. Watson's race, African-American (black), and because she complained

about the discriminatory treatment she was being subjected to, and because she specifically

complained about, opposed and resisted Ms. Young's discriminatory treatment of herself and

others, in violation of D.C. Code§ 2-1402.11(a)(1).

142.    This retaliation involved and affected the terms, conditions, and privileges of Ms.

Watson's employment, in violation of D.C. Code § 2-1402.11.

143.    Ms. Young's actions had the effect and consequence of violating the provisions of

the D.C. Human Rights Act, D.C. Code § 2-1401, *et seq*., in violation of D.C. Code § 2-1402.11.

144.    Ms. Young's retaliatory actions were intentional, were actuated by malice, spite, and ill-will, were willful and wanton, and evinced a conscious and reckless disregard for the rights of Ms. Watson.

145.    As a direct and proximate result of Ms. Young's conduct, Ms. Watson has suffered, and will in the future suffer, great damage including loss of past and future income, loss of career and business opportunities and advancement, past pecuniary expenses, future pecuniary expenses, great anxiety, headaches, insomnia, weight gain, digestive issues, a loss of confidence, embarrassment, humiliation, inconvenience, a sense of betrayal, isolation and profound injustice, damage to her reputation, mental anguish, stress, pain and suffering.

146.    As a direct and proximate result of  Ms. Young's retaliation, Ms. Watson is entitled to recover damages pursuant to D.C. Code § 2-1403.16, as described in D.C. Code §2-1403.13 and the Code of D.C. Municipal Regulations, Title 4, Chapter 2, 4-200 CDCR, *et seq*.

147.    Due to the character and severity of Ms. Young's actions, and consistent with his intentional retaliation, Ms. Watson is also entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LATOYA D. WATSON, by counsel, jointly and severally, requests that this Court enter judgment in her favor, and against the Defendants, CNN AMERICA INC. and TARA YOUNG, jointly and severally, on the above counts as applicable to each, and further:

(a)    Award Ms. Watson compensatory damages on each of the above-stated Counts; and in addition

(b)    Award Ms. Watson punitive and exemplary damages on each of the above-stated Counts; and in addition

(c)     Award injunctive relief consisting of an order prohibiting Defendant CNN

America Inc. from engaging in further employment practices that create or tolerate a hostile,

discriminatory or retaliatory work environment based on race; and in addition

(d)     Declare that the Defendants have violated the District of Columbia Human Rights

Act; and in addition

(e)     Enjoin the Defendants from further violations of the District of Columbia Human

Rights Act; and in addition,

(f)     Award Ms. Watson reasonable attorneys' fees and the costs of this action,

including expert witness fees; and in addition

(g)     Award Ms. Watson such other and further relief as may be appropriate under the

circumstances.

## JURY DEMAND

**PLAINTIFF LATOYA D. WATSON DEMANDS A TRIAL BY JURY.**

June 7, 2021                                  Respectfully submitted,

*/S/ CARLA D. BROWN*
Carla D. Brown
cbrown@cbcblaw.com
D.C. Bar No. 474097
CHARLSON BREDEHOFT COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
*Counsel for Plaintiff, Latoya D. Watson*

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

LATOYA D. WATSON
_____
                        Plaintiff

vs.

                                                        Case Number _____

CNN AMERICA, INC.
_____
                        Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Carla D. Brown
_____                         _Clerk of the Court_
Name of Plaintiff's Attorney

11260 Roger Bacon Dr., #201                    By _____
Address                                                                 Deputy Clerk
Reston, VA  20190

(703) 318-6800                                         Date _____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

                contra

                                                   Número de Caso: _____

_____
                                    Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                    Por: _____
_____
Dirección                                           Subsecretario

_____

                                    Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
ይህንን ትርጉም ለማግኘት (202) 879-4828 ይደውሉ          የአማርኛ ትርጉም ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                        Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

LATOYA D. WATSON
_____
                              Plaintiff
            vs.

                                              Case Number _____

TARA   YOUNG
_____
                              Defendant

**SUMMONS**

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Carla D. Brown                              *Clerk of the Court*
_____
Name of Plaintiff's Attorney

11260 Roger Bacon Dr., #201          By _____
_____
Address                                           Deputy Clerk
Reston, VA  20190
_____

(703) 318-6800                          Date _____
_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828   ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

                contra

                                                        Número de Caso: _____

_____
                                    Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                        Por: _____
_____
Dirección                                               Subsecretario

_____

                                        Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
ይከተ翻译ያ翻wል翻ይ翻(202) 879-4828 로翻译译ና译 시译ሴ요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

                        Vea al dorso el original en inglés
                        See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

| Latoya D. Watson | Case Number: |
| --- | --- |

vs                                            Date: __June 7, 2021__

CNN America, Inc. and Tara Young            ☐ One of the defendants is being sued
                                            in their official capacity.

| Name: *(Please Print)*  Carla D. Brown | Relationship to Lawsuit |
| --- | --- |
| Firm Name:  Charlson Bredehoft Cohen & Brown, PC | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.: | ☐ Self (Pro Se) |
| (703) 318-6800                          474097 | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury      ☒ 6 Person Jury          ☐ 12 Person Jury

Demand: $ 5,000,000.00 _____     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____     Judge: _____     Calendar #:_____

Case No.:_____     Judge: _____     Calendar#:_____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

**A. CONTRACTS**                        **COLLECTION CASES**

| | | |
| --- | --- | --- |
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☒ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10 Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

/S/ CARLA D. BROWN

Attorney's Signature

June 7, 2021

Date

CV-496/ June 2015